UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GREGORY WILLIAMS,

        Plaintiff,

  v.

MICHAEL J. ASTRUE, Commissioner of Social Security Administration,

        Defendant.

CASE NO. C08-5054RBL

REPORT AND RECOMMENDATION

Noted for September 5, 2008

This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). This matter has been briefed. After reviewing the record, the undersigned recommends that the Court affirm the Administration's final decision.

<u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Plaintiff, Gregory Williams, was born in 1962. He completed high school, and he has worked in the past as a customer service representative, a switchboard operator, a mailroom clerk, a teller, a cashier, a restaurant manager, a janitor/custodian, and a laborer. Plaintiff testified that he last worked in 2005, performing custodial duties for a church 10 hours per week (Tr. 59 & 356). His wife testified that Plaintiff did not continue to work for the church due to her husband's inability to perform many of the required tasks, such as shampooing the carpet. It appears Plaintiff last worked a full-time schedule in 2002 as a cashier and as a customer service representative for the local power company (Tacoma City Light). Plaintiff testified that the job ended when the program ended, and he wasn't called to return. He stated he often took unscheduled breaks, felt fatigued, and he was unable to focus or concentrate. (Tr. 363).

Plaintiff filed applications for disability insurance benefits and SSI disability benefits on September 28, 2004 (Tr. 12, 53-55, 349A-349D). Plaintiff alleged disability beginning on December 31, 2002, due to sickle cell anemia, diabetes, high blood pressure, asthma, and migraines (Tr. 53, 115, 349A). The applications were denied initially (Tr. 47-52, 349G-349J) and on reconsideration (Tr. 44-45, 349K-349L). A hearing held was held before an ALJ on March 26, 2007 (Tr. 350-402). On May 24, 2007, the ALJ issued a decision finding that Plaintiff was not disabled because he could perform other work existing in significant numbers in the national economy as an assembler, a charge account clerk, and a solderer (Tr. 9-26).

Following the five-step administrative process, at step-one, the ALJ determined that Mr. Williams had not engaged in substantial gainful activity since his alleged onset date (December 31, 2002). (Tr. 14.) 20 C.F.R. § 404.1520(b). At step-two, the ALJ found that Mr. Williams had several "severe" impairments: "hypertension, diabetic neuropathy, peripheral neuropathy, depression, and obesity." (Tr. 15.) 20 C.F.R. § 404.1520(c). At step-three, the ALJ concluded Plaintiff's impairments neither met or equaled the requirements of a Listed impairment. (Tr. 15.) 20 C.F.R. § 404.1520(d). After step three, but before step-four, the ALJ determined Plaintiff's residual functional capacity, i.e., the most he could do despite the total limiting effects of all his impairments. (Tr. 15.) *See* 20 C.F.R. § 404.1545 (2008) (defining "residual functional capacity"). According to the ALJ, Plaintiff had the residual functional capacity to:

> occasionally lift and carry 20 pounds; stand and/or walk for two hours in an eight hour day, sit for six hours in an eight hour day, and do unlimited pushing and pulling. He cannot climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs, and can occasionally balance, stoop, kneel, crouch, and crawl. He needs to avoid concentrated exposure to fumes, odors, dusts, gases, heights, and hazards. He can understand, remember, and carry out simple instructions. He would have average ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis within customary tolerances of employers' rules regarding sick leave and absence (i.e., eight hours a day, for five days a week, or an equivalent work schedule). He can exercise normal judgment in making work-related decisions; can respond appropriately to supervision, coworkers, and work situations; and can deal with changes all within a routine work setting.

(Tr. 15.) In other words, the ALJ determined Mr. Williams could perform a limited range of "light" work. *See* 20 C.F.R. § 404.1567(b)(defining "light" work).

At step-four, the ALJ found Williams could not perform his past relevant work. (Tr. at 24.) 20 C.F.R. § 404.1520(f). At the last step, step-five, the ALJ consulted the Grids (20 C.F.R. Pt. 404,

Subpt. P, App. 2, Table 2 § 201.28) and relied on the testimony of a vocational-expert to concluded Mr. Williams has been capable of making a successful adjustment to other work, noted above, that existed in significant numbers in the national economy. (Tr. 25). The ALJ concluded Mr. Williams is not disabled and thus, Plaintiff's applications for social security benefits was denied. On December 6, 2007, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision (Tr. 3-5). 20 C.F.R. §§ 404.981, 416.1481, 422.210.

Plaintiff brings this action pursuant to 205(g) of the Social Security Act ("the Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of the ALJ's decision denying plaintiff's applications for social security benefits. Specifically, plaintiff argues (1) the ALJ failed properly evaluate Plaintiff's mental impairment, (2) the ALJ erroneously omitted a restriction to "repetitive" tasks from his Residual Functional Capacity assessment, (3) the ALJ erroneously evaluated Dr. Panzer's Opinions, (4) the ALJ improperly relied on unpublished and undisclosed policy about mental impairments, (5) the ALJ erroneously evaluated the opinions of Dr. Peterson and Dr. Clifford, (6) the ALJ failed to obtain the required explanation from the Vocational Expert for the departure of her testimony from the DOT guidelines, and (7) the ALJ failed to properly evaluate the lay witness testimony. In response, the Commissioner asserts that the ALJ 's decision is supported by substantial evidence in the record and the court should affirm the administration's final decision, denying plaintiff's application for social security benefits.

## DISCUSSION

This Court must uphold the determination that plaintiff is not disabled if the ALJ applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Secretary's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

A. *THE ALJ PROPERLY EVALUATED PLAINTIFF'S MENTAL IMPAIRMENT*

The existence of a mental impairment requires an ALJ to evaluate the severity of the impairment using the "special technique" outlined in 20 C.F.R. §§ 404.1520a and 416.920a. *See* Gutierrez v. Apfel, 199 F.3d 1048, 1051 (9th Cir. 2000) (construing an earlier version of 20 C.F.R. § 404.1520a requiring an ALJ to complete a psychiatric review technique form). This technique requires an ALJ to rate a claimant's degree of limitation in the four "B" criteria functional areas of activities of daily living, social functioning, concentration, persistence, or pace, and episodes of decompensation, and to include these findings in his or her decision. See 20 C.F.R. §§ 404.1520a, 416.920a.

Here, as noted above, the ALJ found Plaintiff had a severe impairment due to depression, and the ALJ properly evaluated the severity of Plaintiff's depression in his written decision. First, the ALJ summarized the physical and mental medical opinions. Specifically, the ALJ noted Dr. Panzer felt Plaintiff's attention and concentration were impaired "as claimant seemed tired and distractible" and Plaintiff was "tired of being depressed." (Tr. 20). The ALJ agreed with Dr. Panzer's limitation to simple and repetitive tasks due to Plaintiff's physical and mental condition, but did not agree with Dr. Panzer's conclusion that Plaintiff would not be able to function well socially or with other workers. The ALJ properly discounted this aspect of Dr. Panzer's assessment based on contradictory evidence in the record, including Plaintiff's credibility, his ability to work part-time since the date of onset, Plaintiff's activity level, and Plaintiff's testimony and past social behavior.

Next, the ALJ relies on the opinions of the state agency medical experts, (Dr. Peterson and Dr. Clifford), who found insufficient evidence of mental impairments from the alleged onset dated, but nonetheless found Plaintiff's depression caused only mild limitations on activities of daily living, moderate limits on social function, and moderate limits with concentration, persistence and pace. (Tr. 20, 173). The ALJ cited the state agency expert's completed Mental Residual Functional Capacity Assessment in the record (3F), which states Plaintiff is capable of following directions and maintaining concentration/attention, can work with co-workers, and accept direction from a supervisor (Tr. 20, 177-179). The ALJ properly evaluated Plaintiff's mental impairments by referencing and addressing these records and the ALJ clearly adopted portions of Dr. Panzer's opinion and the state agency opinions when

the ALJ asked the vocational expert to assume (i) a person who is limited in his ability to understand, carry out, and remember only simple instructions, (ii) a person with average ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, and (iii) a person with the ability to maintain concentration, persistence, and pace consistent with performing unskilled work activity. (Tr. 23-24).

B. *THE ALJ'S FAILURE TO INCLUDE RESTRICTION TO "REPETITIVE" TASKS IN RFC OR HYPOTHETICAL HARMLESS ERROR*

Plaintiff argues substantial evidence does not support the ALJ's residual functional capacity ("RFC") assessment because it did not include a restriction to "repetitive" tasks. Social Security regulations define residual functional capacity as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. 404, Subpt. P, App. 2 § 200.00( c). In evaluating whether a claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's "ability to work on a sustained basis." 20 C.F.R. § 404.1512(a). The regulations further specify: "When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis." Id. at § 404.1545(b).

As noted above, the ALJ expressly adopted Dr. Panzer's restriction to repetitive tasks, and thus it would be expected to be a part of Plaintiff's RFC. However, in response to Plaintiff's argument, Defendant concedes the error, pointing out that it is harmless. Defendant explains the restriction to "repetitive" tasks clearly excludes Plaintiff from working as a solderer or a charge account clerk, but it does not exclude Plaintiff from performing work as an assembler. The vocational expert testimony indicated working as an assembler would be a simple and repetitive task. (Tr. 391). Accordingly, the distinction or inclusion of a restriction to "repetitive" tasks to Plaintiff's RFC would not change or undermine the ALJ's conclusion at step-five – that Plaintiff can perform a significant number of (assembly) jobs within the national economy.

C. *THE ALJ PROPERLY EVALUATED THE MEDICAL OPINIONS OF DR. PANZER, DR. PETERSON, AND DR. CLIFFORD*

The medical opinion of a treating physician is entitled to special weight because (s)he is employed to cure and has a greater opportunity than nontreating physicians to know the claimant's condition.

Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir.1988). The ALJ may reject the opinion of a treating or examining physician if the ALJ provides specific and legitimate reasons for doing so that are based on substantial evidence in the record. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir.1995). If the treating or examining physician's opinion is uncontroverted, the ALJ's reasons for rejecting the opinion must be clear and convincing. Id. The ALJ may credit the testimony of an examining consultative physician and a nonexamining physician who is subject to cross-examination, even though they may reach different conclusions than the treating physician. Id. An examining physician's opinion based on independent clinical findings can constitute substantial evidence. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989). The opinion of a nonexamining physician is not by itself substantial evidence that justifies the rejection of the opinion of a treating physician, however. Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996). There must be other significant evidence in the record to justify such a rejection. Id. The ALJ's observations of the claimant's demeanor at the hearing also is not sufficient additional evidence for this purpose. Id.

Plaintiff argues the ALJ erroneously evaluated the opinions of Dr. Panzer, Dr. Peterson, and Dr. Clifford. On April 4, 2005, Dr. Richard Panzer, M.D., performed a consulting exam to help determine the extent of Plaintiff's physical and mental condition. As a part of his evaluation, Dr. Panzer only reviewed a "follow-up note from a doctor whose name was written illegibly, as well as a self-report which was, at best, confusing." (Tr. 310). Dr. Panzer wrote the following functional assessment:

> The claimant says quickly that he needs some help, some medication, "You know what I need!" His attitude toward treatment and recovery is positive in that his physician, Dr. Lee at the clinic, believes he can get well. When asked about his ability to manage funds, he said he does not think he would be able to and adds, "My wife handles all the money." While he could perform simple and repetitive tasks, it is clear performing complex tasks would be beyond him. He would also have difficulty relating to coworkers and the public with his gloomy, flattened style of interaction. Regular attendance in order to deal with ordinary work stress would be difficult for him to maintain and the support needed is clearly psychopharmacologic and psychotherapeutic, and possibly case management as well.

(Tr. 313).

As referenced above, the ALJ reviewed and commented on Dr. Panzer's opinion. The ALJ clearly discounted Dr. Panzer's opinion because it was inconsistent with other evidence in the record with respect to Plaintiff's activity level, daily routine and social activities. The ALJ clearly took into consideration a lack of consistency with respect to Plaintiff's statements regarding his abilities and limitations. For

instance, the ALJ noted Plaintiff stopped working in January 2003 as a security guard, not because of disability-related reasons, but because Plaintiff had too many [traffic] tickets on his record to continue with that career. (Tr. 14). In March 2003, Plaintiff stated he had been working out at the gym several times a week, but had to stop to help provide care to his ailing mother-in-law. (Tr. 17)  The ALJ noted Plaintiff alleged he could not afford dental care, but at the same time he was noted to go on vacation with his wife. The ALJ further noted that in March 2004, Plaintiff reported he had "party days" and drank a lot of beers, (Tr. 17). Medical providers noted Plaintiff's diabetes and hypertension were hard to control due to Plaintiff's failure to comply with his prescriptions, and the ALJ noted Plaintiff failed to show up for several medical appointments. Id.  Finally, the ALJ noted that in December 2004, Plaintiff was dropped from his diabetic study (which provided him with medical and some  financial support) due to the fact that he had tested positive for taking marijuana and cocaine. (Tr. 18).  The ALJ, unlike Dr. Panzer, was privy to the entire record, and thus, the undersigned finds no error in the ALJ's evaluation and assessment of Dr. Panzer's opinion

Plaintiff similarly argues the ALJ failed to properly evaluate the opinions of the state agency psychologists, Dr. Peterson and Dr. Clifford.  As noted and referenced above, the ALJ relied on the state agency opinion to formulate Plaintiff's RFC and the hypothetical posed to the Vocational expert.  The hypothetical posed to the vocational expert included a person who (i) could understand, carry out, and remember simple instructions, (ii) had an "average ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis within the customary tolerances of employers' rules regarding sick leave and absence, that is, eight hours a day for five days a week or an equivalent work schedule," (iii) could "exercise normal judgment in making work-related decisions," and (iv) could "respond appropriately to supervision, co-workers, and work situations and deal with changes all within a routine work setting." These limitations are supported and reflected in Dr. Peterson's, Dr. Clifford's and Dr. Panzer's (discussed above) mental evaluations, particularly when read in context of the entire record.

D.  *THE ALJ'S REFERENCE TO THE APPEALS  COUNCIL POLICY DOES NOT CONSTITUTE A BASIS FOR  REVERSAL OR REMAND*

The ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered. <u>Brown v. Heckler</u>, 713 F.2d 441, 443 (9th Cir. 1983).

Addressing Plaintiff's ability to maintain concentration, persistence, and pace, in his opinion the ALJ referenced the following:

> The Appeals Council has stated: "A finding that the claimant has moderate limitations in several areas of mental work-related functioning does not express the claimant's non-exertional capacity in terms of work-related function, as required in Social Security Ruling (SSR) 96-8p. Residual functional capacity does not represent the least an individual can do despite his or her limitations or restrictions, but the most (see SSR 96-8p). For example, an individual who has moderate limitations in the ability to understand, remember, and carry out detailed instructions may be able to do simple, unskilled work. An individual who has moderate limitations in the ability to interact appropriately with the general public may be able to do work that does not require interaction with the general public. However, it is unclear what kind of work an individual can do if he has moderate limitations in the ability to perform activities within a schedule, maintain regular attendance, complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. Because the Administration Law Judge did not articulate a function-by function residual functional capacity, the vocational expert was left to speculate about the meaning of 'moderate' limitation in considering whether the individual could perform his past relevant work."...

The ALJ further explained, "... in this case, the hypothetical did include a function-by-function analysis. The vocational expert did not have to speculate and was provided with specific instructions regarding the hypothetical." (Tr. 24).

Plaintiff argues substantial evidence does not support the ALJ's decision because he improperly relied on unpublished and undisclosed Appeals Council policy. Plaintiff states, "A claimant has a right to know the legal rules and authority upon which his or her disability claim will be adjudicated. The Social Security Act, its regulations, Social Security Rulings, Acquiescence Rulings, the Hearings, Appeals and Litigation Law (LEX) manual (HALLEX), and Program Operations Manual System (POMS) are all published law and policy available to all claimants and their representatives."

The principle noted in the Appeals Council's statement cited to by the ALJ is not different from the Social Security Administration's policy in the Program Operations Manual System (POMS). The POMS provide that the mental RFC assessment is not to include severity ratings or "nonspecific qualifying terms" such as "moderate" or "moderately severe" to describe a claimant's limitations as "such terms do not describe function and do not usefully convey the extent of capacity limitation." *See* POMS DI 24510.065(B)(1), available at 2001 WL 1933372. After reviewing the record, the undersigned finds no error in the ALJ's analysis or determination.

E.  *THE ALJ'S DECISION IS NOT ERRONEOUS DUE TO ANY CONFLICT BETWEEN THE VOCATIONAL*

*EXPERT'S TESTIMONY AND THE DOT*

Social Security Ruling 00-4p requires an ALJ to ask a vocational expert specific questions about the DOT ("Dictionary of Occupational Titles"): "When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT." SSR 00-4p; *see also* Massachi v. Astrue, 486 F.3d 1149, 1152-54 (9th Cir. 2007) (applying SSR 00-4p).

Here, plaintiff argues substantial evidence does not support the ALJ's reliance upon the vocational expert's testimony because the ALJ did not obtain either a "reasonable explanation" or "persuasive evidence" from the vocational expert to explain the conflict between her testimony and the DOT. Specifically, Plaintiff notes the vocational expert identified a "solderer" job corresponding to DOT, No. 813.684-022 with the purported exertional level of "sedentary." (Tr. at 391.) DOT, No. 813.684-022. However, this solderer job is "light" work, not "sedentary" work per the DOT. Plaintiff makes similar points regarding the DOT definition of a charge account clerk and the vocational expert's testimony.

As discussed above, in the context of "repetitive" tasks, the vocational expert's testimony that Plaintiff could work as a solderer or charge account clerk cannot be relied upon by the ALJ. However, Plaintiff correctly points out that the vocational expert did not make any error in identifying work as an assembler, and there appears to be no conflict with the DOT. For the same reasons stated above, Plaintiff's argument is moot and/or harmless. The ALJ's decision – that Plaintiff is not disabled because he is capable of working as an assembler – is not erroneous or undermined by the ALJ's failure to inquire regarding conflicts with the DOT and the jobs of a solder or charge account clerk..

F. *THE ALJ PROPERLY WEIGHED PLAINTIFF'S CREDIBILITY AND CONSIDERED THE LAY WITNESSES' STATEMENTS*

The ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered. Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). The ALJ can reject testimony of lay witnesses only if s/he gives reasons germane to each witness whose testimony s/he rejects. Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

As noted above, the ALJ noted several significant problems with Plaintiff's credibility and Dr. Panzer's evaluation which was based in large part on Plaintiff's subjective statements. The ALJ also

REPORT AND RECOMMENDATION
Page - 9

questioned the subjective statements and testimony of Donna Williams, Plaintiff's wife. The ALJ wrote:

> Claimant's wife testified that she had been married to claimant for eight years. She felt his Tacoma City Light job ended due to poor job performance. Claimant sometimes left his post when he was not supposed to. He stopped the janitorial work as it was "getting to him" and he was not performing the job duties. She claimed she did all cooking, cleaning, and yard work, and that claimant spent most of the day in bed. She elevated his feet. Claimant was never away from home for more than eight hours. He appeared depressed and fatigued. He did not talk much but did get snappish, which indicated that he was not feeling well. The undersigned notes that claimant's wife makes $1300 a month operating a daycare. She is financially motivated to support claimant's disability claim, and she would not get the benefit of claimant's employment if claimant's wages were garnished for child support.

(Tr. 22). The ALJ concluded, "The lay evidence is only credible to the extent it supports that claimant can do a limited range of sedentary work. He has been able to do volunteer work and work for pay. He goes on vacation and socializes with friends. There are many credibility issues as noted above." (Tr. 23).

Plaintiff's argument that the ALJ erroneously rejected the lay witness testimony is not persuasive. The ALJ clearly relied on his credibility determination with respect to Plaintiff, as one of the major reasons to reject Donna Williams' testimony. Plaintiff's argument fails to acknowledge this significant legitimate reason for discounted her statements. In addition, the ALJ's opinion clearly is based on the medical testimony which supports Plaintiff's ability to work as an assembler, which is also inconsistent with Donna Williams' testimony. The ALJ did not err when he assessed the lay witness statements.

## CONCLUSION

Based on the foregoing discussion, the Court should affirm the Administration's final decision denying plaintiff's application for social security disability benefits. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **September 5, 2008**, as noted in the caption.

DATED this 13[h] day of August, 2008.

/s/ J. Kelley Arnold
J. Kelley Arnold
U.S. Magistrate Judge